UNITED PACIFIC INSURANCE
COMPANY, Appellant,

v.

Audry COLLINS and Mabel Collins,
Appellees.

Court of Appeals of Kentucky.

Dec. 4, 1964.

As Modified April 30, 1965.

J. K. Wells, Paintsville, for appellant.

Cordell Martin, Hindman, Rudy Yessin, Smith, Reed, Yessin & Davis, Joseph J. Leary, Frankfort, for appellees.

MILLIKEN, Chief Justice.

This appeal is from a judgment awarding appellees, Audry and Mabel Collins, $14,301. The facts show that the appellant, United Pacific Insurance Company, was surety on the performance bond of the original contractor who undertook to construct two school buildings in Knott County. Upon default of this contractor, the appellant Company entered into a contract dated August 15, 1959, with appellees for the completion of the buildings.

The contract between the Company and the appellees provided that the appellees should receive reimbursement for gross construction cost not to exceed $61,964.91 (including a service fee of $4,500), plus varying amounts for correcting certain defective work of the previous contractor and additional amounts for excavation and filling. In June, 1960, the work not having been completed, appellees were placed in default and a third party contractor selected by the appellant to complete the work.

Appellees brought this action to recover money allegedly owed them for labor and materials. By counterclaim the appellant asserted that it had paid to appellees and the third party contractor "gross costs" far in excess of the maximum amount agreed upon, and asked that whatever it might properly owe appellees under their complaint be offset by this excess and that a judgment in its favor for the difference be entered.

The claims of both parties were submitted to a jury which returned a verdict for appellees in the full amount of their itemized expenses. As ground for reversal, the Company insists that the trial court erred in not granting it a peremptory instruction, for there was no issue of fact to be determined by a jury but merely an accounting to be made under the written contract. Appellees contend that it was for the jury to determine if the parties were operating under an oral agreement made after the termination of the written contract, when the claimed expenses were incurred. The key question presented is whether the written contract was terminated.

For appellees to recover in this action, the written contract with its limit on reimbursement for construction must necessarily be deemed terminated or at least modified as to this limit. The instruction under which the appellees recovered assumed that the written contract had terminated six months after the date of its signing or execution.

However, the appellees' complaint sets out the fact that these parties "continued to work under the terms and the provisions of the aforesaid contracts referred to in Exhibits A and B, until 17th day of June, 1960." The recovery was sought on the basis of the terms of the written contract. An allegation that this contract was terminated and that recovery was sought under a subsequent oral agreement appears nowhere in the pleadings. (The fact that the allegation of an oral agreement was a surprise to the appellant was brought to the court's attention by motion to exclude reference to it prior to submission of the case to the jury.)

Appellees should not be allowed to recover under a theory directly opposed to the one upon which they based their complaint. When a shift in theory or legal premise is objected to by the opposing party and it appears "that admission of such evidence (supporting an oral contract, in this case) would prejudice him in maintaining his * * * defense upon the merits," either a continuance should be granted to enable the opposing party to prepare his defense or evidence in support of the new theory denied admission. CR 15.02.

Furthermore, on this appeal the appellees maintain that the written contract had ended by its terms on February 15, 1960, six months after the date of its signing. The pertinent section of the contract reads as follows:

"The Contractor covenants to complete all work called for by this contract within six (6) months of the date hereof and to indemnify, and save harmless the Surety from any and all loss, liability, claims and damage resulting from any delay in completion of said work beyond said completion date."

This clause does not provide for an automatic termination. As stated in 13 Am. Jur., 2d, Building and Construction Contracts, Sec. 47: "A mere failure to complete the work within the specified time does not ipso facto terminate the contract, but only subjects to (sic) contractor to damages for the delay." This statement is applicable to the section of the contract quoted above. The fact that appellant permitted the appellees to try for four more months to finish the school—until mid-June, 1960—after the February, 1960, intended completion date, certainly did not change the terms of the written contract; it merely waived the time for completion provision for four months.

■ In support of the judgment in their favor, appellees rely on Green River Steel Corporation v. Globe Erection Company, Ky., 294 S.W.2d 507, wherein we held that by their actions the parties to a contract may waive a provision as to who should decide what is extra work. The only evidence of modification cited by appellees in the instant case refers to the necessity of the architect's approval of estimates before payment for corrective work subsequent to February 15, 1960. This evidence does not affect the maximum amounts of compensation agreed upon in the written contract for the basic construction. See 3A, Corbin on Contracts, Sec. 720.

Since there was no evidence of an oral modification of the relevant terms of the written contract and the contract did not terminate automatically in February, 1960, the trial court erred in overruling appellant's motion for a peremptory instruction based on the written contract and for judgment notwithstanding the verdict.

The judgment is reversed with directions to the trial court to determine, directly or with the aid of a commissioner, the net amount, if any, due to the appellant on its counterclaim, to make all appropriate findings of fact and to enter a new judgment based thereon.